IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **MARC STARR**<br>1202 North Belgrade Road<br>Silver Spring, Maryland 20902<br>*Resident of Montgomery County*<br><br>**ANDREW ROSEN**<br>132 Thornton Hall Road<br>Kearneysville, West Virginia 25430<br>*Resident of Jefferson County*<br><br>**KELLY LEWIS**<br>6317 Park Heights Avenue<br>Unit 304<br>Baltimore, Maryland 21215<br>*Resident of Baltimore County*<br><br>and<br><br>**VU LEE**<br>13217 Liberty Bell Court<br>Germantown, Maryland 20874<br>*Resident of Montgomery County*<br><br>    Plaintiffs,<br><br>*Individually and on Behalf of All Similarly Situated Employees*<br><br>v.<br><br>**CREDIBLE BEHAVIORAL HEALTH SOFTWARE, INC.**<br>1 Choice Hotels Circle<br>11th Floor<br>Rockville, Maryland 20850<br><br>Serve: CSC-Lawyers Incorporating Service<br>    7 St. Paul Street<br>    Suite 820<br>    Baltimore, Maryland 21202<br><br>    Defendant. | Civil Action No.:<br><br><br>Collective/Class Claims<br><br><br>Jury Trial Requested |

## COLLECTIVE ACTION COMPLAINT FOR WAGES OWED

Plaintiffs MARC STARR, ANDREW ROSEN, KELLY LEWIS and VU LEE, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against CREDIBLE BEHAVIORAL HEATLH SOFTWARE, INC, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant supplies behavioral health technology and practice management software to various healthcare providers. These providers are Defendant's clients, ranging from clinical and inpatient facilities to community and residential-based programs. Defendant's focus is to assist its clients with setting up their software and to resolve any technical issues they may have.

To assist its clients, Defendant employs Partner Services Coordinators at both its Maryland offices. Partner Services Coordinators are at the very bottom of Defendant's employment hierarchy and serve as the initial point of contact anytime a client has a concern. They are primarily responsible for routine technical support. They have to respond to multiple inquiries from clients each day and help them resolve basic issues with their software.

Plaintiffs were all employed as Partner Services Coordinators. Their duties were routine in nature. However, the demands of their employment required them to work overtime. Defendant

2

required its Partner Services Coordinators to always be available to assist its clients when needed. This resulted in Partner Services Coordinators having to routinely work hours outside of their schedules.

Persistent understaffing and high turnover rates also resulted in Plaintiffs and other Partner Services Coordinators having to work overtime. These conditions had the effect of increasing their already heavy workload due to having to respond to an increased number of client inquiries each day. This required them to work an even greater number of overtime hours each week.

Defendant refused to pay Plaintiffs and other Partner Services Coordinators overtime wages. Defendant classified all of its Partner Services Coordinators as exempt salaried employees not entitled to overtime pay. This was despite the fact that their duties were clerical in nature.

Defendant's refusal to pay Plaintiffs and other Partner Services Coordinators overtime wages constituted a willful violation of the FLSA and applicable state wage laws. Dozens of Partner Services Coordinators have been harmed by Defendant's unlawful conduct.

## THE PARTIES

1. Plaintiff Marc Starr (hereinafter, "Starr") is an adult resident of Montgomery County, Maryland.

2. Plaintiff Andrew Rosen (hereinafter, "Rosen") is an adult resident of Jefferson County, West Virginia.

3. Plaintiff Kelly Lewis (hereinafter, "Lewis") is an adult resident of Baltimore County, Maryland.

4. Plaintiff Vu Lee (hereinafter, "Lee") is an adult resident of Montgomery County, Maryland.

5. Defendant Credible Behavioral Health Software, Inc. (hereinafter, "Defendant") is an incorporated for-profit business registered in the State of Maryland.

6. Defendant's headquarters is in Rockville, Maryland.[1]

7. Defendant has offices in Rockville and Gaithersburg, Maryland.

8. Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL.

9. Due to the amount in revenues generated, Defendant is subject to the FLSA, MWHL and the MWPCL; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

10. Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

11. At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce based on the duties they performed for Defendant.

12. Plaintiffs and others similarly situated were employed by Defendant as Partner Services Coordinators.

13. From approximately October 2015 until December 2017, Plaintiff Starr was employed with Defendant as a Partner Services Coordinator.

14. From approximately April 2017 until April 2018, Plaintiff Rosen was employed with Defendant as a Partner Services Coordinator.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

15. From approximately September 2016 until June 2018, Plaintiff Lewis was employed with Defendant as a Partner Services Coordinator.

16. From approximately November 2017 until September 2018, Plaintiff Lee was employed with Defendant as a Partner Services Coordinator.

17. Defendant classified Plaintiffs and other similarly situated Partner Services Coordinators as exempt employees.

18. The duties assigned to Plaintiffs and other Partner Services Coordinators did not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL or the MWPCL.

19. At all times relevant to this Complaint, Defendant had the authority to control Plaintiffs' tasks and the tasks of other Partner Services Coordinators.

20. Defendant retained and exercised the power to change Plaintiffs' and other similarly situated employees' duties.

21. Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

22. Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and other Partner Services Coordinators.

23. Defendant made all decisions regarding Plaintiffs and other Partner Services Coordinators' rates and methods of pay.

24. Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and others similarly situated.

25. Plaintiffs' and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

26. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

27. Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

28. No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

29. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Maryland. This includes the creation of the compensation policies that gave rise to Plaintiffs' claims for unpaid wages.

30. This Honorable Court has personal jurisdiction over Defendant; Defendant is incorporated under the laws of Maryland and has its principal place of business in the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

31. Defendant provides behavioral health technology and practice management software to various providers, who are Defendant's clients. Defendant's clients include clinical, inpatient and correctional facilities, as well as community and residential-based programs.

6

32. Defendant assists its clients with reporting, business intelligence and other practicalities concerning their software. Defendant has to assist its clients with setting up their software and resolving basic technical issues they experience.

33. To assist its clients with these issues, Defendant employs/employed Partner Services Coordinators at its Maryland offices.

34. Plaintiffs all worked for Defendant as Partner Services Coordinators.

35. From approximately October 2015 until December 2017, Plaintiff Starr was employed as a Partner Services Coordinator.

36. From approximately April 2017 until April 2018, Plaintiff Rosen was employed as a Partner Services Coordinator.

37. From approximately September 2016 until June 2018, Plaintiff Lewis was employed as a Partner Services Coordinator.

38. From approximately November 2017 until September 2018, Plaintiff Lee was employed as a Partner Services Coordinator.

39. Plaintiffs and other Partner Services Coordinators were primarily responsible for providing customer service and routine technical support. Answering phone calls and e-mails were their core tasks. They were the first point of contact anytime Defendant's clients had basic concerns with their software.

40. Plaintiffs and other Partner Services Coordinators were assigned multiple client inquiries each day. These inquiries were provided in a list form in Defendant's queue. Plaintiffs and other Partner Services Coordinators would have to field incoming requests from clients in the queue by specified times. They were constantly reminded of the importance of responding to each client immediately. Partner Services Coordinators were required to respond via phone or email.

41. While on the phone or corresponding with clients, Plaintiffs and other Partner Services Coordinators would try to resolve the basic software issues that a client was experiencing. They were required to follow Defendant's standard operating procedures in order to assist with each issue. It was mandatory that they adhere to Defendant's policies and procedures at all times.

42. There were also regular meetings that Plaintiffs and other Partner Services Coordinators were required to attend that were for the purpose of receiving additional instructions and updates regarding how to better assist clients with resolving their software issues. There were specific guidelines that management instructed Partner Services Coordinators to abide by when addressing the software issues that a client had.

43. Most of these issues were basic in nature. They primarily consisted of assisting clients with repetitive technical problems. Common examples include password resets, problems clients had with their software when attempting to make changes to their billing rates, difficulties experienced by clients when trying to input data, limitations that clients faced when attempting to update system information and other routine technical concerns. Plaintiffs and other Partner Services Coordinators simply had to follow Defendant's protocols to assist clients with resolving these concerns.

44. If Plaintiffs and other Partner Services Coordinators were unable to resolve the issue, they were required to get assistance from Defendant's higher-ranking employees. Said employees had specialized knowledge in various fields related to Defendant's software. Plaintiffs and other Partner Services Coordinators would have to explain the issue to their superiors and follow their specific instructions. The persistent problems that clients had with their systems required Partner Services Coordinators to constantly seek assistance from their superiors in matters they had no authority or experience to address.

45. There were also a variety of subject matter meetings hosted by Defendant's higher-level employees that were for the purpose of providing Partner Services Coordinators with a wider range of information regarding specific aspects of Defendant's software. This was so that Partner Services Coordinators could become more familiar with resolving client issues that were uncommon. Plaintiffs and other Partner Services Coordinators were mandated to attend these meetings in order to obtain this information.

46. Plaintiffs and other Partner Services Coordinators were strictly prohibited from moving forward with resolving client issues that were not within their domain. They were required to first gain approval from their superiors. This was to ensure that the manner in which Partner Services Coordinators resolved each client's software issue was in accordance with Defendant's guidelines.

47. If it was readily apparent that a client was experiencing a software issue that was well outside of their domain, Plaintiffs and other Partner Services Coordinators would have to immediately forward the issue to their superiors. Their superiors had the requisite level of knowledge and experience to resolve software concerns that were more complex and were responsible for addressing all complicated issues that a client had.

48. Before they could forward the client issue to their superiors, Plaintiffs and other Partner Services Coordinators had to first document each step they took to try to resolve the issue themselves. There were detailed procedures that Plaintiffs and other Partner Services Coordinators had to follow in order to record each step before they could ask for assistance.

49. Even when they were able to resolve the issue on their own, it was still demanded that Plaintiffs and other Partner Services Coordinators document what steps they took to resolve

the issue, as well as all of their other daily activities. They were required to track the specific duties they completed each day and the length of time that it took to complete each particular task.

50. Some of their other tasks included having to demonstrate to Defendant's clients how to use their software. These demonstrations typically occurred during presentations that took place outside of the office. The scope of these presentations were routine in nature. They centered on outlining basic instructions for Defendant's clients.

51. There were guidelines that Plaintiffs and other Partner Services Coordinators had to follow to prepare the materials for their presentations. The materials that Partner Services Coordinators used and the manner in which they conducted their presentations had to also be approved by their superiors.

52. Defendant's supervisors would closely monitor Plaintiffs and other Partner Services Coordinators to ensure they were properly completing their tasks. There were checks and balances aligned with all of the tasks that Defendant's Partner Services Coordinators performed.

53. Plaintiffs and other Partner Services Coordinators' tasks never involved having to develop any procedures related to how to Defendant conducted its business. Their opinions were also never sought in regard to these procedures. They had no input regarding the manner in which their tasks were completed.

54. Plaintiffs and other Partner Services Coordinators were simply required to follow the procedures implemented by Defendant. They lacked independent judgment altogether. The manner in which they performed their tasks had to always conform with Defendant's processes.

55. While performing their tasks, Plaintiffs and other Partner Services Coordinators did not require any specialized training or advanced knowledge. They did not write substantive reports. The duties they performed were all basic in nature. The technical issues they addressed did not

require any analysis.

56. Plaintiffs and other Partner Services Coordinators did not have decision-making authority. The methods they had to follow to try to resolve a client's software issues were aligned with Defendant's specific guidelines. They were not able to utilize discretion. Their tasks were simply routine.

57. Plaintiffs and other Partner Services Coordinators performed their tasks to the extent required by Defendant.

58. Defendant paid all of its Partner Services Coordinators in the same manner. Defendant classified Plaintiffs and other similarly situated Partner Services Coordinators as exempt salaried employees not eligible for overtime pay.

59. For the duration of his employment, Plaintiff Starr was paid an annual salary of approximately fifty-five thousand dollars ($55,000.00).

60. Plaintiff Rosen's annual salary was approximately fifty-five thousand dollars ($55,000.00).

61. Plaintiff Lewis's annual salary was approximately sixty thousand dollars ($60,000.00).

62. For the duration of his employment, Plaintiff Lee was paid an annual salary of approximately seventy thousand dollars ($70,000.00).

63. Regardless of the number of hours they worked each week, Plaintiffs and other Partner Services Coordinators were only paid their regular bi-weekly salaries.

64. Plaintiffs and other Partner Services Coordinators all worked the same schedules. They were required to arrive to work by 8:30 a.m. Monday through Friday and work a minimum

of eight (8) hours each day. However, due to the demands of their employment, Plaintiffs and other Partner Services Coordinators consistently worked well over the required minimum.

65. For the majority of his employment, Plaintiff Starr would typically arrive to work before 8:30 a.m. Monday through Friday and would not leave work until 6:00 p.m. or later.

66. Plaintiff Rosen would typically arrive to work by 7:30 a.m. Monday through Friday and would usually not leave work until well after 5:30 p.m.

67. Plaintiff Lewis usually arrived to work by 8:15 a.m. Monday through Friday and would not leave work until 5:30 p.m. or later.

68. During his employment, Plaintiff Lee would typically arrive to work by 7:30 a.m. Monday through Friday and would usually not leave work until well after 5:30 p.m.

69. Understaffing contributed to Plaintiffs and other Partner Services Coordinators having to work overtime. Defendant persistently failed to provide an adequate number of personnel to meet the demands of its business. This had the effect of increasing Plaintiffs and other Partner Services Coordinators' already heavy workload due to having to address a greater number of client inquiries. These conditions forced Plaintiffs and other Partner Services Coordinators to work before and after their scheduled shifts.

70. Plaintiffs and other Partner Services Coordinators also had to attend client presentations off-site, which had the effect of increasing their workload. These presentations elongated Plaintiffs' day because they were still responsible for completing their regular customer service tasks. Having to complete these tasks after their presentations caused Plaintiffs and other Partner Services Coordinators to work excessive hours.

71. Being called upon to attend conferences with Defendant's partners and clients also caused Plaintiffs and other Partner Services Coordinators to work excessive hours. These

conferences occurred outside of the office and would last anywhere from three (3) to five (5) days. At these conferences, Plaintiffs and other Partner Services Coordinators could be called upon to perform a variety of menial tasks. Common examples of these tasks include setting up equipment in the conference rooms, handing out materials and picking up trash.

72. The combination of all of their tasks forced Plaintiffs and other Partner Services Coordinators to work overtime regularly. They consistently worked fifty (50) to fifty-five (55) hours each week. There were times when they worked even more.

73. Plaintiffs and Defendant's other Partner Services Coordinators should have received overtime ("time-and a-half") wages for working over forty (40) hours a week. However, they were denied overtime wages altogether. This was despite the fact that they were not subject to any overtime exemptions.

74. Defendant knew that Plaintiffs and other Partner Services Coordinators worked overtime regularly.

75. Defendant suffered and/or permitted Plaintiffs and other Partner Services Coordinators to work overtime.

76. Although Plaintiffs and other Partner Services Coordinators were mandated to submit bi-weekly time-reports, they could not record working more than forty (40) hours each week.[2] Their supervisors specifically instructed them to underreport their hours. Plaintiffs and other Partner Services Coordinators were subject to reprimands if they inputted working more than forty (40) hours a week

77. There is no *bona fide* dispute that Plaintiffs and other Partner Services Coordinators are owed overtime wages for all hours worked over forty (40) each week.

---

[2] These reports were in the form of Power-Point graphs.

78. In bad faith, Defendant withheld the overtime wages owed to Plaintiffs and its other Partner Services Coordinators.

79. Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

80. Plaintiffs and other similarly situated employees work or worked as Partner Services Coordinators for Defendant.

81. The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

82. Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

83. Defendant suffered or permitted Plaintiffs and other Partner Services Coordinators to work more than forty (40) hours per workweek.

84. Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and all those similarly situated.

85. Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the statutory period. Plaintiffs make these same demands on behalf of all members of the putative class.

86. Plaintiffs consent to be party plaintiffs in this matter. Plaintiffs' consent forms are attached to this Complaint as Exhibits A-D.

87. It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt-in" to this collective action.

88. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

89. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

90. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

91. Upon information and belief, others will choose to join Plaintiffs in this action to recover unpaid wages and seek all other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

92. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that worked as Partner Services Coordinators for Defendant and were subject to the following practices and policies: denial of overtime wages under Maryland wage laws for hours worked over forty (40) in a single workweek.

93. Plaintiffs are members of the proposed class they seek to represent and are adequate representatives thereof.

94. The claims alleged by Plaintiffs are typical of the claims of the proposed class.

95. The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

96. There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

97. Counsel for the proposed class are qualified and experienced in litigating class actions and other complex litigation matters. Counsel is capable of providing adequate representation for all members of the proposed class.

98. A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

99. Therefore, a class action should be certified in this matter.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

*__Count I - Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit__*

100. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

101. Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

102. As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiffs for these additional hours.

103. Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime wages they are owed.

104. There is no bona fide dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

105. Under the FLSA, Plaintiffs are entitled to additional wages from Defendant to compensate them for the hours they worked in excess of forty (40) in a workweek at a rate of one and one-half (1.5) times their regular hourly wage rate.

### Count II. Violation of MWHL: Failure to Pay Overtime Wages to Plaintiffs and all those that are Joined as Party-Plaintiffs in this Matter by Motion or by Any Other Means

106. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

107. Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

108. Pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under Md. Code Ann., Lab. & Empl. § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

109. Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

110. Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

111. There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

112. Under MWHL, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times their regular hourly wage rate.

### Count III - Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and All Those that are Joined as Party-Plaintiff in this Matter

17

113.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

114.    Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501, *et. seq.*, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

115.    Plaintiffs have not received compensation from Defendant for all wages owed for the work they performed before the termination of their employment, as required by Md. Code Ann., Lab. & Empl. §3-505(a). This is specific to Defendant's failure to pay Plaintiffs the overtime wages to which they are entitled.

116.    Defendant willfully and intentionally did not compensate Plaintiffs for the wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

117.    Under the MWPCL, there is no bona fide dispute that Plaintiffs are owed wages for the work they performed during their tenure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated, pray for the following relief:

a)   In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

c)  Designating the named Plaintiffs to act as class representatives on behalf of all employees for the FLSA collective class and the MWHL class;

d)  Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

e)  Judgment against Defendant for its failure to pay Plaintiffs and those appropriately joined to this matter in accordance with the standards set forth by MWHL;

f)  Judgment against Defendant for its failure to pay Plaintiffs and those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

g)  Judgment against Defendant and classifying its conduct as willful and not in good faith;

h)  Judgment against Defendant and classifying Plaintiffs, the collective class and those appropriately joined in this matter as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

i)  An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs and other similarly situated employees' regular hourly rate, for all overtime hours worked;

j)  An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs and those similarly situated, whichever is deemed just and equitable by this Honorable Court;

k)  An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

l)  Leave to add additional Plaintiffs to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

m)  All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

                                                */s/  Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
Kelly A. Burgy, Esq. (20758)
kburgy@nicholllaw.com
Scott E. Nevin, Esq. (22478)
snevin@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005

*Attorneys for Plaintiffs*