# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARC STARR** *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil No. **20-2986 PJM** |
| **CREDIBLE BEHAVIORAL HEALTH, INC.,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Marc Starr and five other named Plaintiffs, as well as members of the putative class, were all employed by Defendant Credible Behavioral Health, Inc., as partner services coordinators between October 15, 2017, and February 24, 2021. They allege that Defendant failed to pay them overtime wages for overtime hours they worked, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*; Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl., §§ 3-501 *et seq.* Before the Court is an unopposed motion for conditional certification of the collective and class and preliminary approval of a settlement agreement. Having held a preliminary fairness hearing, for the reasons provided below, the Court **GRANTS** the motion.

### I. Background

The complaint alleges that, as partner services coordinators, Plaintiffs provided customer service and routine technical support, primarily through answering phone calls and emails. Compl. ¶ 39, ECF No. 1. They were each assigned multiple client inquiries per day and were expected to respond promptly to every client and to resolve software issues according to Defendant's policies and procedures. *Id.* ¶¶ 40–41. Plaintiffs state that most client issues were basic technical problems,

but more complicated matters frequently arose that required them to seek assistance from higher-ranking employees with greater authority. *Id.* ¶¶ 43–44. They were required to document every step they took and the amount of time they spent on each task. *Id.* ¶¶ 45–49. Plaintiffs also had to prepare and present demonstrations on how to use Defendant's software, typically outside of the office. *Id.* ¶¶ 50–51. Performing only basic duties requiring no special training, Plaintiffs were allegedly subject to close supervision and approval and had no independent judgment or ability to provide input into how Defendant conducted business. *Id.* ¶¶ 52–56.

Plaintiffs were all paid in the same manner and worked the same schedules. *Id.* ¶ 58. The named Plaintiffs earned annual salaries ranging from $55,000 to $70,000. *Id.* ¶¶ 59–62. They allege that they were expected to work a minimum of eight hours per day but consistently worked 50 to 55 hours per week, due to both heavy workloads and persistent understaffing. *Id.* ¶¶ 64, 69–72. Defendant purportedly knew that Plaintiffs worked more than 40 hours per week but classified them as exempt salaried employees not eligible for overtime pay and denied them overtime wages altogether. *Id.* ¶¶ 73–74. Further, Plaintiffs allege that Defendant instructed them to record no more than 40 hours per week on their required biweekly time reports, even if they worked in excess of 40 hours. *Id.* ¶ 76.

On October 15, 2020, Plaintiffs filed this putative collective and class action. The proceedings were thereafter stayed for the purpose of mediation, following which the parties reached a settlement agreement. On April 15, 2021, Plaintiffs filed the present unopposed motion for certification of the FLSA collective and Rule 23 class and approval of the parties' settlement agreement.[1] On May 19, 2021, the Court held a preliminary fairness hearing to consider the

---

[1] Prior to the parties' mediation, Plaintiffs initially filed a separate motion for conditional class certification (ECF No. 14). The Court considers the present unopposed motion to supersede that initial motion and will dismiss it as moot accordingly.

2

motion. The Court thereafter signed Plaintiffs' proposed order granting the motion and herein explains its findings in greater detail.

## II. Analysis

The parties seek a settlement in the total amount of $575,000, to resolve all claims arising from Defendant's alleged failure to pay overtime wages to members of the putative class, in violation of the FLSA, MWHL, and MWPCL. Plaintiffs bring an unopposed motion seeking certification of the FLSA collective, certification of the Rule 23 Maryland class, and preliminary approval of the parties' settlement agreement. In addition, Plaintiffs request that the Court authorize the mailing of the proposed Notice of Class Action Settlement, preliminarily approve the requests for attorneys' fees and service awards, and set a final approval hearing for 60 days after preliminary approval.

### A. The Settlement Agreement and Notice

For settlement purposes, the putative class is defined as "individuals who were employed by Defendant as partner service coordinators from October 15, 2017, through February 24, 2021." There are 50 individuals in the class, including the named Plaintiffs. The parties seek a gross settlement amount of $575,000, including $15,000 in total service awards to the three Plaintiffs who attended mediation and attorneys' fees of $191,666.67 or one-third of the settlement fund. This results in a net settlement fund totaling $383,333.33. *See* Settlement Agreement ¶ 7(a)(i), ECF No. 19-2. Settlement recoveries for individual class members average $7,666.67 and range from $134.59 to $25,361.43. Fifty percent of each settlement payment will be taxed as W-2 wages, with applicable deductions made, and the remaining 50% will be taxed as 1099 income, representing statutory damages.

Upon the Court's approval, Plaintiffs' counsel will mail and email their proposed Notice of Class and Collective Action Settlement to all eligible class members, which contains all the necessary information. Class members will have 30 days to opt out of or object to the settlement by mail or email to Plaintiffs' counsel; otherwise, they will automatically be included in the settlement. Following the conclusion of the opt-out period, Plaintiffs request a final approval hearing to be held virtually within 30 days. The agreement provides that within 21 days of the Court's final approval, Defendant will issue settlement payments, service awards, and attorneys' fees to Plaintiffs' counsel, who will then distribute the funds accordingly.

### B. Certification of the Collective and Class

Plaintiffs request that the Court certify this case as a FLSA collective action and Rule 23 class action for settlement purposes only.

#### 1. FLSA Collective

Certification of a collective action under the FLSA is a two-stage process. First, at the notice stage, the court "makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members is appropriate.'" *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010)). In this first stage, to obtain conditional certification, plaintiffs "need only make a 'relatively modest factual showing'" that they "were victims of a common policy, scheme, or plan that violated the law." *Id.* (quoting *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006)). Second, at the decertification stage, typically following discovery, the court performs a more stringent analysis as to whether the plaintiffs are in fact similarly situated and renders a final decision on the appropriateness of proceeding as a collective action. *Syrja*, 756 F. Supp. 2d at 686.

4

Plaintiffs seek certification of all individuals who were employed by Defendant as partner services coordinators between October 15, 2017, and February 24, 2021. All members of the putative collective had the same job duties and were allegedly subject to the same policies that denied them earned overtime compensation. Defendant uniformly classified partner services coordinators as exempt employees and paid them an annual salary without overtime pay. The 50 members of the putative collective advance all the same claims against Defendant concerning their unpaid overtime wages. For these reasons, the Court easily finds that Plaintiffs have met the burden of showing that all members are similarly situated, and it will preliminary certify the FLSA collective for purposes of the settlement.

## 2. *Rule 23 Class*

A court may certify a class for settlement where the plaintiffs demonstrate that the proposed class and class representatives meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and satisfy one of the three categories of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997). These provisions "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.

### a. *Rule 23(a)*

First, to meet the numerosity requirement, there must be a showing that the proposed class is so numerous that "joinder of all members is impractical." Fed. R. Civ. P. 23(a). The Fourth Circuit has held that a class with over 30 members generally satisfies this requirement. *See Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005). Here, the numerosity factor is satisfied because the class includes 50 eligible individuals, making joinder impractical.

Next, commonality is met when the prospective class members share the same central facts and applicable law. *See Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 499 (D. Md. 2010). In other words, the class members need not have "suffered a violation of the same provision of law" but must "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). Here, commonality exists because the settlement class members suffered the same alleged injury (i.e., unlawfully denied overtime wages) and share the central question of whether or not all members were paid correctly when they were classified as salaried exempt employees.

Third, to meet the typicality requirement, the representative plaintiffs' claims must be sufficiently aligned with those of the putative class. *Cuthie*, 743 F. Supp. 2d at 499. The claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same legal theory. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998). Here, typicality is satisfied because the named Plaintiffs' claims are the same as those of the class members, having arisen from the same conduct, and the prosecution of their claims advances the interests of all settlement class members.

Finally, the adequacy-of-representation requirement centers on (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent. *Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 288 (D. Md. 2008). Representation is adequate if the plaintiffs' attorneys are qualified and able to prosecute the action on behalf of the class. *Cuthie*, 743 F.2d at 499. Here, Plaintiffs assert that Plaintiffs' counsel has successfully handled numerous wage-related lawsuits nationally and worked actively and diligently to pursue the claims of Plaintiffs and the putative class. As to class representation, Plaintiffs state that the first named Plaintiff, Marc Starr, has an

adequate understanding of his duties, shares the interests of the putative class, and will continue to work to protect those shared interests. *See* Starr Decl., ECF No. 14-2. Accordingly, the Court finds that Plaintiffs have satisfactorily demonstrated the adequacy of their representation.

    *b. Rule 23(b)*

A proposed class must satisfy one of the three circumstances described in Rule 23(b). Plaintiffs assert that the proposed class meets Rule 23(b)(3), which requires a court to find (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Where the purported class members were subject to the same harm resulting from the defendant's conduct and the "qualitatively overarching issue" in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). Here, a single question of Defendant's liability is central to the case and common to the entire class: Plaintiffs allege, and Defendant denies, that Defendant violated federal and state labor laws by failing to pay its partner services coordinators overtime wages. As current or former partner services coordinators, all potential class members will be subject to the same legal analysis as to the question of Defendant's liability. Thus, the Court finds that predominance is satisfied.

As to the superiority requirement, courts consider four factors: (1) the interests of class members in individually prosecuting their claims, (2) the extent and nature of related pending litigation by class members, (3) the desirability of concentrating the litigation in one forum, and (4) the likely difficulties in managing the class. Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs assert, and the Court agrees, that all four factors weigh in favor of certifying the proposed settlement

class: there is no indication of a preference for individual adjudication, there are no known related pending cases, concentrating the case here is desirable for both parties, and there are no apparent difficulties in managing the class.

### C. Preliminary Settlement Approval

To preliminarily approve the parties' proposed settlement, the Court must find that the agreement satisfies the standards under both the FLSA and Rule 23 and that the requested attorneys' fees and service payments are reasonable.

#### *1. FLSA Standards*

Although the Fourth Circuit has not specifically addressed the appropriate standards for reviewing such settlements for approval, district courts in this circuit typically follow the rubric suggested in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010). An FLSA settlement should be approved if the terms of the settlement are a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores*, 679 F.2d at 1355. The reasonableness of the compromise can be determined based on numerous factors, including the extent of discovery, the stage and complexity of the litigation, the absence of fraud or collusion, the experience of plaintiffs' counsel, the opinions of counsel, and the probability of plaintiffs' success on the merits and amount of the settlement. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *see Saman v. LBDP, Inc.*, No. 12-1083-DKC, 2013 WL 2949047, at *3 (D. Md. June 13, 2013). There is a "strong presumption in favor of finding a settlement fair," as the court's role is more a "balancing of likelihoods rather than an actual determination of the facts and law in passing upon the proposed settlement." *Hoffman v. First Student, Inc.*, No. 06-1882-WDQ, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010) (cleaned up).

Here, the parties have shown that there exists a *bona fide* dispute over whether partner services coordinators have been misclassified by Defendant as exempt employees, as well as whether they worked overtime hours and are therefore owed overtime wages. The parties decided to engage in mediation and were able to come to an early resolution that both parties, while maintaining their adverse contentions as to liability, believe is fair and reasonable. The proposed settlement allows the parties to avoid potentially lengthy litigation over both collective and class certification and liability, including formal discovery that could greatly increase costs. The parties further represent that there is no evidence of any collusion or fraud, and all parties were represented by competent and experienced counsel in an arm's-length negotiation overseen by a retired judge of this Court. *See* Ex. B, Letter from Judge Benson Everett Legg, ECF No. 19-3. The Court thus finds that the settlement is a fair and reasonable resolution of a *bona fide* dispute.

### 2. Rule 23 Standards

Rule 23(e)(1)(A) requires thorough judicial review of any settlement of the claims of a certified class to ensure that the terms are fair, adequate, and reasonable, such that "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) § 21.61 (2004). Because "the adversariness of litigation is often lost after the agreement to settle," the role of the court in reviewing a proposed settlement is crucial, though it is "limited to approving the proposed settlement, disapproving it, or imposing conditions on it." *Id.*

A court's review of whether a proposed Rule 23 class action settlement is fair and reasonable is a two-step process. The first step is a determination of whether the settlement is "within the range of possible approval" such that there is "probable cause" to notify the class members of the proposed settlement. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855

F. Supp. 825, 827 (E.D.N.C. 1994) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 & n.13 (7th Cir. 1980)). At this initial stage, the Court must make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation § 21.632. The second step, taken after this preliminary approval and notice, is a fairness hearing to determine whether the settlement is "fair, reasonable, and adequate" for all class members and thus should receive final approval. *Id.* § 21.634.

The Court finds, preliminarily, that the proposed settlement is fair, reasonable, and adequate for the same reasons articulated above. Plaintiffs initially sought overtime compensation for class members working 55 hours each week, and Defendants denied any entitlement to overtime; the settlement compromise provides for an average of 46 hours (six overtime hours) per week. Plaintiffs further agreed to the addition of a uniform percentage multiplier instead of treble damages initially sought. The Court is satisfied that this agreement meets the Rule 23 standards and will approve Plaintiffs' proposed settlement.

### *3. Attorneys' Fees*

Plaintiffs' counsel seeks preliminary approval of an award of attorneys' fees totaling $191,666.67 or one-third of the settlement fund. In the Fourth Circuit, "the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees" in class actions. *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015). This method aligns the interests of class counsel and class members because it "ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Jones v. Dominion Res. Servs. Inc.*, 601 F. Supp. 2d 756, 758–59 (S.D. W. Va. 2009). A request for one-third of a settlement fund is common in this circuit and generally considered reasonable. *See, e.g.*,

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505–06 (M.D.N.C. 2018).

Plaintiffs' counsel asserts that they have obtained a positive result for the class and have received no objections to the settlement to date. They state that they have years of experience in complex class-action litigation and have already spent more than 326 hours litigating this case. Moreover, they emphasize, the settlement here will avoid exceedingly complex and time-intensive litigation, including discovery and lengthy motions practice. Considering counsel's qualifications, the amount of fees requested, and the total amount of the settlement fund, the Court finds that the requested attorneys' fees are reasonable and preliminarily approves the request.

### *4. Service Payments*

To determine whether an incentive payment to certain individual plaintiffs is warranted, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 469 (D. Md. 2014) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Plaintiffs seek service payments for Plaintiffs Marc Starr, Kelly Lewis and Anthony Regulus, who they say made significant efforts to assist counsel with the investigation of their claims and helped materially advance the resolution of this case through active involvement in the negotiations. Plaintiffs further state that those three were given no special treatment in the calculation of damages, and Plaintiffs' counsel seeks a service award on their behalf solely based on the time spent and risks taken for the benefit of the class. Counsel requests $7,000 each for Starr and Lewis and $1,000 for Regulus, totaling $15,000 in service awards. In light of the extent of those three Plaintiffs' involvement in the case and the modest amount requested relative to the total settlement

fund, the Court finds that the requested incentive payments are appropriate. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive payment to a single plaintiff in suit resulting in recovery of more than $13 million); *Carter v. MV Transp., Inc.*, No. 09-527-RWT, 2012 WL 7863096, at *2 (D. Md. June 4, 2012) (approving incentive payment of $7,000 for named plaintiff in settlement totaling up to $595,000).

### III. Conclusion

In sum, the Court **GRANTS** Plaintiffs' unopposed motion. The FLSA collective and Rule 23 class are preliminarily certified for settlement purposes; Plaintiffs are authorized to mail the proposed notice of the settlement agreement to members of the class; the requested attorneys' fees and service awards are preliminarily approved; and a final approval hearing will be scheduled to occur approximately 60 days from now.

A separate order has issued.

May 25, 2021

_____
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**